EAST GRAND RAPIDS SCHOOL DISTRICT v KENT COUNTY TAX
ALLOCATION BOARD

Docket No. 63962. Argued January 8, 1981 (Calendar No. 1).—Decided
December 22, 1982. Rehearing denied 417 Mich 1104.

The East Grand Rapids School District brought an action in the
Kent Circuit Court, seeking a writ of mandamus directing the
Kent County Tax Allocation Board to continue to allocate
variable millage as prescribed by 1933 PA 162 in the City of
East Grand Rapids and Grand Rapids Township. The act ena-
bled the district to take advantage of the city's exemption from
the constitutional 15-mill limitation on ad valorem property
taxes by imposing a higher tax rate on property within the
district which was in the city than property which was in the
township. Before 1979, the board regularly authorized variable
millage; however, in 1979, the board announced that it would
no longer authorize variable millage because it believed the act
to be unconstitutional. The court, George R. Cook, J., held the
act constitutional and directed the board to determine whether
variable millage should be allocated under it. The Court of
Appeals, J. H. Gillis, P.J., and R. B. Burns and N. J. Kaufman,
JJ., affirmed in an opinion per curiam (Docket No. 45753). The
defendant thereafter made the requisite findings and determi-
nations and authorized variable millage. The defendant ap-
peals.

In an opinion by Justice Ryan, joined by Chief Justice Fitz-
gerald and Justices Kavanagh, Williams, Levin, and Coleman,
the Supreme Court *held:*

1933 PA 162, in authorizing non-uniform general ad valorem
taxation of property within a school district violates the consti-
tutional requirement of uniform ad valorem taxation of prop-
erty. To satisfy the requirement, a tax rate imposed by a single
taxing unit must be identical throughout the territory to which
it applies.

1. The case presents a justiciable issue, notwithstanding the

References for Points in Headnotes
[1-4] 71 Am Jur 2d, State and Local Taxation §§ 152, 154.
[3] 71 Am Jur 2d, State and Local Taxation §§ 76, 77.

defendant's compliance with the mandate of the circuit court and the fact that Grand Rapids Township became a charter township not subject to the 15-mill limitation subsequent to the bringing of this action. The defendant's compliance while pursuing its appeal did not render the controversy moot, but was a responsible governmental decision in the circumstances of the case, allowing an orderly annual tax collection by providing the taxpayers with notice of the amount of their tax levies. Moreover, relief is possible in the form of a refund or credit of the taxes improperly assessed and paid. The change in the legal status of the township has no effect on the validity of the 1979 levy. A determination of the issue will affect the levying of variable millage by other tax allocation boards.

2. The defendant was justified in asserting the unconstitutionality of 1933 PA 162 as a defense to an action for mandamus. The defendant could have brought an action for a declaratory judgment challenging the constitutionality of the act. No compelling reason was shown why the defense could not be raised. In reaching its decision, the board relied on the advice of counsel and an opinion of the Attorney General that the act was invalid.

3. Taxation, as authorized by the constitution, must be uniform and equal. The 15-mill limitation on property taxes relates solely to the amount which may be assessed against a piece of property in a given year and in no way infringes upon the rule of uniformity. The authorization of variable rates of taxation within a single taxing unit by 1933 PA 162 violates the requirement of uniformity and the statute is unconstitutional. The error in a decision of the Supreme Court which decided otherwise lay in confusing the taxing power of a city with the taxing power of a school district which included the city and part of a township outside the city. A school district tax must be levied at the same rate throughout the district whether the district includes both townships and municipal corporations or not.

Reversed.

92 Mich App 786; 285 NW2d 463 (1979) reversed.

315 Mich 566; 24 NW2d 213 (1946) overruled.

1. TAXATION — UNIFORMITY — VARIABLE MILLAGE — AD VALOREM TAXES.

A tax rate imposed by a single taxing unit must be uniform throughout the territory to which it applies; variable general ad valorem taxation of property within a taxing unit may not

be authorized by a county tax allocation board (Const 1963, art 9, § 3; 1933 PA 162; MCL 211.251 *et seq.;* MSA 15.511 *et seq.).*

2. TAXATION — SCHOOLS — UNIFORMITY — VARIABLE MILLAGE.

The provision of the school code which authorizes the levying of variable millage within school districts lying partly within the limits of a municipal corporation violates the requirement of uniformity of taxation within a single taxing unit and is unconstitutional (Const 1963, art 9, § 3; 1933 PA 162; MCL 211.252; MSA 15.512).

3. TAXATION — SCHOOLS — VARIABLE MILLAGE — JUSTICIABLE ISSUES.

A defense that the provision of the school code which permitted a levy of variable millage within a school district was unconstitutional, asserted by a county tax allocation board to an action for mandamus by a school district to compel the board to authorize the levy of variable millage, was not rendered moot when the board, in compliance with a writ of mandamus issued by the circuit court, made determinations as required by the code, authorized variable millage, and pursued its appeal; nor did a subsequent change in the legal status of a township within the district which changed the millage limitation and made authorization of variable millage unnecessary render the issue moot; the assertion presented a justiciable issue, and the court was able to fashion effective relief (Const 1963, art 9, § 6; MCL 211.203[2], 211.252; MSA 7.63[2], 15.512).

4. TAXATION — SCHOOLS — VARIABLE MILLAGE — TAX ALLOCATION BOARDS — STANDING.

A county tax allocation board had standing to assert the unconstitutionality of the provision of the school code which permitted a levy of variable millage within a school district in an action by the district seeking a writ of mandamus to compel the board to authorize a variable millage; the board could have initiated an action for declaratory judgment to have the act declared unconstitutional (GCR 1963, 521; MCL 211.252; MSA 15.512).

*Varnum, Riddering, Wierengo & Christenson* (by *Eugene Alkema* and *Randall W. Kraker)* for plaintiff.

*Dickinson, Wright, McKean, Cudlip & Moon* (by *John R. Axe, James A. Samborn,* and *Mark A. Kellman)* for defendant.

Ryan, J. This is a taxation case.

We are asked to invalidate 1933 PA 162, MCL 211.251 *et seq.;* MSA 15.511 *et seq.,* which authorizes so-called "variable millage", as a violation of the uniformity of taxation provision of Const 1963, art 9, § 3.

We hold that act 162 is unconstitutional.

I

Plaintiff, The School District of the City of East Grand Rapids, encompasses both the entire City of East Grand Rapids and a portion of Grand Rapids Township. It is an independent taxing unit authorized to levy ad valorem property taxes on property located within the school district boundaries.

Article 9, § 6 of the Michigan Constitution of 1963 limits the rate of taxation which may be levied against property to 15 mills "on each dollar of the assessed valuation of property as finally equalized", and exempts from this limitation taxes imposed upon property in communities for which different tax limitations are provided by local charter or general law.[1] At the time of the events

---

[1] Article 9, § 6 provides, in pertinent part:

"Except as otherwise provided in this constitution, the total amount of general ad valorem taxes imposed upon real and tangible personal property for all purposes in any one year shall not exceed 15 mills on each dollar of the assessed valuation of property as finally equalized. Under procedures provided by law, which shall guarantee the right of initiative, separate tax limitations for any county and for the townships and for school districts therein, the aggregate of which shall not exceed 18 mills on each dollar of such valuation, may be adopted and thereafter altered by the vote of a majority of the qualified electors of such county voting thereon, in lieu of the limitation hereinbefore established. These limitations may be increased to an aggregate of not to exceed 50 mills on each dollar of valuation, for a period of not to exceed 20 years at any one time, if approved by a majority of the electors, qualified under Section 6 of Article II of this constitution, voting on the question.

"*The foregoing limitations shall not apply * * * subject to the*

involved in this case, the City of East Grand Rapids, as a municipal corporation, was exempt from the 15-mill limitation and the Township of Grand Rapids was not.

The defendant, Kent County Tax Allocation Board, is a creature of statute, MCL 211.205; MSA 7.65, which is obligated to examine the budgets of the several taxing authorities in Kent County, including the plaintiff school district, and to determine the tax rates that may be imposed by each taxing unit in the county in order that each might meet its budget requirements. If the board determines that the total millage requested by all of the county taxing units, cumulatively, exceeds the 15-mill limitation of Const 1963, art 9, § 6, the board is required to allocate the 15 mills among the various taxing units. MCL 211.211; MSA 7.71.

Stated differently, if the budget submissions of the county, a school district, a community college district, an intermediate school district, and a township other than a charter township, reflect a cumulative need for a tax rate which in the aggregate exceeds 15 mills, the defendant board is required to decide the tax rate or millage amount that it will permit each of the taxing units to impose, so that the total of the tax rates to be imposed by all the affected units will not exceed 15 mills.

Taxes levied *by* a municipal corporation, because of the exemption provision of the second paragraph of Const 1963, art 9, § 6,[2] are not subject to

*provisions of Section[s] 25 through 34 of this Article, to taxes imposed for any other purpose by any city, village, charter county, charter township, charter authority or other authority, the tax limitations of which are provided by charter or by general law."* (Emphasis added.)

[2] See fn 1.

the 15-mill limitation and may be imposed in addition to those taxes levied against city property by other taxing units in the county. See MCL 211.203(2); MSA 7.63(2).

Property taxes imposed *by* a township, in this case Grand Rapids Township, do not enjoy this exemption, however, and must be imposed at a rate which, together with all other taxes levied on the same property, will not exceed 15 mills. The result, in this case, is an excess taxing capability in the City of East Grand Rapids as compared with adjacent Grand Rapids Township.

Act 162 was enacted to enable a school district, such as the plaintiff, which embraces a city and a township, or part of each, to take advantage of an incorporated municipality's excess taxing capability and exemption from the 15-mill limitation by imposing a higher tax rate on city property than upon non-city property. Specifically, § 2 of act 162 authorized the defendant to establish a "regular tax rate" to be levied against all of the property located within the school district, and a maximum additional tax rate, not to exceed 15 mills, to be assessed against all property lying within that portion of the school district which is also encompassed within the city limits of East Grand Rapids.[3] Such a school millage differential within a

---

[3] "In the case of any school district lying partly within and partly without the limits of a municipal corporation the following procedure shall be observed: The commission shall find, in accordance with the provisions of the property tax limitation act the maximum tax rate which may be levied against all of the property lying within such school district. Such tax rate is hereinafter referred to as the 'regular tax rate'. Thereafter the commission shall find the maximum additional tax rate which fairly and reasonably is equivalent to and represents the additional annual value to the property lying within the boundaries of the municipal corporation resulting from the greater proximity of the school buildings and facilities to such property and the greater accessibility thereof, and not already reflected in

single school district is commonly referred to as "variable millage". Pursuant to act 162, the board has regularly authorized variable millage within the plaintiff school district.

For a number of years prior to 1979, the defendant board regularly allocated tax rates for levies against Grand Rapids Township and the City of East Grand Rapids as follows:

| *Township Property* | | *City Property* | |
|---|---|---|---|
| Kent County Taxes | 4.8 mills | Kent County Taxes | 4.8 mills |
| Kent County Inter-mediate School District Taxes | .1 mills | Kent County Inter-mediate School District Taxes | .1 mills |
| Township Taxes | 1.0 mills | | |
| Sub-total | 5.9 mills | Sub-total | 4.9 mills |

There being no obligation to include the East Grand Rapids city tax rate in the 15-mill ceiling formula, the board was free to authorize an extra mill, or 10.1 mills, for school district taxes upon property in the City of East Grand Rapids. As a result, the board historically authorized this so-called "variable millage" of 9.1 mills upon property in Grand Rapids Township and 10.1 mills on property in the City of East Grand Rapids for the same school district levy.

In 1979, contrary to its historical practice of allocating variable millage, and upon the advice of

assessed valuations. In no case shall the additional tax rate be such as to increase beyond the net limitation tax rate the total of all taxes levied against property within the limits of such municipal corporation, exclusive of rates levied for the payment of interest and principal on obligations incurred prior to December 8, 1932, and rates levied pursuant to the provisions of the charter of such municipal corporation. The findings and order of the commission made and entered concerning the maximum tax rates of such school district shall specify both the maximum regular tax rate and the maximum additional tax rate computed as aforesaid." MCL 211.252; MSA 15.512.

its counsel, the defendant board announced that it would no longer authorize variable millage within any school district in Kent County because the board believed that act 162, which authorized the practice, was unconstitutional. Plaintiff then commenced this action in the Kent Circuit Court, praying for a writ of mandamus to compel the defendant to continue to allocate millage pursuant to act 162.[4] After a hearing, an order was issued directing the defendant to make the findings and determinations required by act 162. The Court of Appeals affirmed in a per curiam opinion,[5] declaring that it was bound by this Court's decision in *Thoman v Lansing,* 315 Mich 566; 24 NW2d 213 (1946).

*Thoman* was a 1946 challenge to act 162 in which it was claimed that the statute violated the 1908 Michigan Constitution for the identical reasons for which it is claimed today to violate the 1963 Constitution, and was held to be constitutional. In affirming the judgment of the trial court in this case, the Court of Appeals stated that the controlling constitutional provisions of the 1908 and 1963 Constitutions were "almost identical" and that *Thoman,* therefore, was decisive. We granted leave to appeal in order to reconsider the *Thoman* holding.

Because we find the reasoning of that case to be unpersuasive and inaccurate, it is overruled, and we hold that, in authorizing non-uniform general

[4] The opinion issued by the trial court made it clear that it lacked the authority to issue an order directing the defendant to authorize variable millage within the East Grand Rapids School District. Rather, the board was ordered to make the findings and determinations required by act 162, and to enter an order consistent with those findings and determinations.

[5] *East Grand Rapids School Dist v Kent County Tax Allocation Board,* 92 Mich App 786; 285 NW2d 463 (1979).

ad valorem taxation of property lying within a single school district, or so-called variable millage, act 162 contravenes Const 1963, art 9, § 3, and is invalid.

## II

Before discussing the constitutionality of act 162, however, there are two threshold questions, neither of which is decisive of the controversy, which merit our attention:

1. Whether the issue of the constitutionality of act 162 is moot, and

2. Whether the defendant has standing to assert the invalidity of act 162.

## A

The plaintiff suggests two reasons for the asserted mootness:

1) That the plaintiff has obtained the relief for which it originally filed suit because, after losing its case before the trial court and the Court of Appeals, the defendant board made the requisite findings and determinations and issued an order authorizing variable millage in the East Grand Rapids School District for the 1979 tax year in accordance with the mandate of the trial court, and

2) That Grand Rapids Township became a charter township in 1980 and, as such, like the City of East Grand Rapids, is no longer subject to the 15-mill tax limitation, rendering act 162 and variable millage inapplicable in that township.

While the defendant board concedes the *facts* of both assertions, it insists that the Court is presented, nevertheless, with a justiciable issue.

We agree with the defendant.

It is correct, of course, that, as a general rule, this Court will not entertain moot issues or decide moot cases. *LaBello v Victory Pattern Shop, Inc,* 351 Mich 598; 88 NW2d 288 (1958). A case is moot when it presents "nothing but abstract questions of law which do not rest upon existing facts or rights". *Gildemeister v Lindsay,* 212 Mich 299, 302; 180 NW 633 (1920).

Addressing the plaintiff's first asserted ground for mootness, we conclude that the defendant's obedience to the trial court's writ of mandamus in September, 1979, did not moot the controversy between the parties for that year. Defendant is bound by a statutory timetable with respect to its taxing duties each year.[6] This timetable was extended in 1979 to enable the Court of Appeals to pass upon the issue which was before it. That Court issued its decision on October 2, 1979. Further postponement of the board's allocation duties, in the form of a stay from this Court, would necessarily have carried final tax authorization over into a subsequent tax year, wreaking financial havoc in the East Grand Rapids School District. The exigencies of orderly annual tax collection required that the board provide county tax-

---

[6] MCL 211.216; MSA 7.76 requires all tax allocation boards to issue their final orders with respect to the maximum regular tax rates and maximum additional tax rates before the second Monday of June of each year. MCL 380.1213; MSA 15.41213 requires the school district to certify taxes to be levied on property within the district no later than September 15 of each year. The school board is unable to do this without a final authorization from the tax allocation board.

payers with some notice of the amount of their annual tax levies. We believe that the board's compliance with the trial court's mandate, while pursuing an appeal to this Court, was a responsible governmental decision in the circumstances of the case and did not moot the controversy.

Moreover, the parties agree that the 1-mill extra levy against property in the City of East Grand Rapids for the 1979 tax year generated approximately $97,000 for the plaintiff school district. An aspect of mootness includes the question of the court's ability to fashion appropriate and effective relief to resolve the alleged controversy. *Tierney v Bay City Union School Dist,* 210 Mich 424; 177 NW 955 (1920). Since GCR 1963, 865.1(7) empowers this Court to fashion such remedies as justice requires by ordering a refund of school taxes improperly collected for the 1979 tax year, we are able to restore to the real parties in interest, the taxpayers of the City of East Grand Rapids, the 1 mill which we hereinafter hold to have been improperly assessed.

Therefore, we believe that the parties retained their adversarial positions and that a controversy based on concrete facts still exists, at least with respect to the 1979 tax year.

Plaintiff's second argument of mootness is that, because Grand Rapids Township became a charter township in 1980, taxes levied by it are no longer subject to the 15-mill limitation. Const 1963, art 9, § 6. Therefore, the extra mill levied by the school district against property in the City of East Grand Rapids can now also be levied in Grand Rapids Township, and variable millage is no longer a

possibility in the East Grand Rapids School District.

Manifestly, the change in the legal status of Grand Rapids Township in 1980 has no effect on the validity of the variable millage levy for the 1979 tax year. Moreover, while Grand Rapids Township, by virtue of its status as a charter township, is no longer subject to variable millage, rendering moot the issue presented by this case with respect to the parties for all tax years subsequent to 1979, that is not the case elsewhere in the state. Upon oral argument, this Court was advised that over one-half of the counties in this state have tax allocation boards and a number of them are implementing the variable millage provisions of act 162.

While the record is silent in the matter, it is not likely that the two communities involved in this case were the last of those implementing the increased taxation authority authorized by act 162.

B

Plaintiff also challenges the defendant's standing to assert the unconstitutionality of act 162 as a defense to an action for mandamus, arguing that, as an administrative body, the defendant is bound to unquestioning obedience of all legislative enactments not judicially declared unconstitutional.

It appears to be well settled that public officials or agencies are permitted to initiate actions for declaratory judgment to have statutes declared unconstitutional. *Detroit Bd of Ed v Superintendent of Public Instruction,* 319 Mich 436; 29 NW2d 902 (1947). This Court also permitted a public body

to bring suit to have a statute endorsed as constitutional. In *Muskegon Heights v Danigelis,* 253 Mich 260; 235 NW 83; 73 ALR 696 (1931), the City of Muskegon Heights sought to have a statute authorizing the sale of bonds for the relief of destitute citizens declared constitutional, because the bidder, acting pursuant to the advice of counsel that the bonds were of questionable validity, declined to buy them.

Concerning the applicability of the then-effective declaratory judgment statute,[7] the *Danigelis* Court stated:

"Under former practice a friendly suit would have been brought, entertained, and right in the matter adjudicated. Now, under the declaratory judgment act, there is presented issuable questions of fact and law of great public moment, and, if the act is to serve at all, it must be permitted to serve in this instance." *Id.,* p 265.

We are satisfied that the defendant in this case might have filed a lawsuit pursuant to GCR 1963, 521 to challenge the constitutional validity of act 162. An actual controversy does exist, as we have already determined, and the Kent County Tax Allocation Board is an interested party. Our attention has not been invited to any compelling reason why, if the defendant could have asserted the unconstitutionality of the statute as a plaintiff in a declaratory judgment action, it should not be permitted to do so in defense of an action for mandamus. However, we need not decide the issue on that basis alone.

In making their collective judgment that act 162 could not be constitutionally squared with the

[7] All prior declaratory judgment statutes have now been replaced by GCR 1963, 521.

uniformity provisions of the 1963 Constitution, the members of the defendant board were fortified not only by the advice of their eminent counsel to that effect, but also by a formal opinion of the Attorney General of the State of Michigan that the statute was invalid.[8] While the opinion of the Attorney General that a statute is unconstitutional does not have the force of law and certainly does not compel agreement by a governmental agency, it is universally recognized that among the primary missions of a state attorney general is the duty to give legal advice, including advice concerning the constitutionality of state statutes, to members of the legislature, and departments and agencies of state government. It is true that, in this case, the defendant board was confronted on the one hand with a 1946 decision of this Court, *Thoman, supra,* declaring act 162 to be constitutional, and on the other with a 1974 opinion of the Attorney General declaring it to be unconstitutional. Certainly, as between a Supreme Court decision and a conflicting Attorney General's opinion, the Court's pronouncement takes precedence. It must be noted, however, that in his opinion the Attorney General acknowledged the apparently conflicting holding of *Thoman,* but distinguished the case on the theory that, unlike the 1908 Constitution, the 1963 Constitution, with its simultaneously enacted uniformity and tax limitation provisions, "obviates [the *Thoman* rationale] that one is preferred to the other".[9]

In distinguishing rather than contradicting the

[8] OAG 1973-1974, No 4817, p 160 (June 24, 1974).

[9] As will be explained more fully later in the text, the *Thoman* Court reasoned that the uniformity of taxation provision of the 1908 Constitution conflicted with a later-enacted constitutional amendment, § 21 of art 10, concerning tax limitations and thus "must yield" to the latter.

*Thoman* decision, the Attorney General's opinion could have been reasonably understood by the agency officials to be consistent with the Court's determination. While we do not wish to be understood as adopting the Attorney General's view, his analysis lends some credence to the defendant's decision to credit the opinion and follow its implied advice.

We do not, by these observations, wish to be understood as condoning disregard by public officials of decisions of the judiciary. We believe that there was no such disregard in this case. The defendant board obeyed the mandate of the trial court after affirmance of the trial court's decision by the Court of Appeals. We hold only that, in the circumstances of this case, the defendant was justified in bringing to judicial resolution the issue of the constitutionality of act 162.

### III

Having determined that the defendant is a proper party to question the constitutional validity of act 162, we now turn our attention to the merits of the constitutional argument. The defendant contends that act 162 violates the constitutional mandate that all general ad valorem property taxes be levied uniformly. Const 1963, art 9, § 3.

In *Huron-Clinton Metropolitan Authority v Boards of Supervisors of Five Counties,* 304 Mich 328; 8 NW2d 84 (1943), this Court explained the meaning of the requirement of the uniform rule of taxation as provided in the Constitution of 1908:

" 'What is meant by the words "taxing by a uniform rule?" And to what is the rule applied by the constitution? No language in the constitution, perhaps, is more

important than this; and to accomplish the beneficial purposes intended, it is essential that they should be truly interpreted, and correctly applied. "Taxing" is required to be "by a uniform rule;" that is, by one and the same unvarying standard. Taxing by a uniform rule requires uniformity not only in the rate of taxation, but also uniformity in the mode of the assessment upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation; and this equality of burden cannot exist without uniformity in the mode of the assessment, as well as in the rate of taxation. But this is not all. The uniformity must be co-extensive with the territory to which it applies. If a State tax, it must be uniform over all the State; if a county, town, or city tax, it must be uniform throughout the extent of the territory to which it is applicable.' " 304 Mich 335-336, quoting *Exchange Bank of Columbus v Hines,* 3 Ohio St 1, 15 (1853).

While the Court in the *Huron-Clinton Metropolitan Authority* case was addressing the uniformity of taxation language of the 1908 Constitution, what was said there applies with full force to the uniformity provision of the 1963 Constitution. Although the language of the two provisions varies slightly, the concept of uniformity expressed in each is identical. The uniformity provision of the 1963 Constitution does not require that all communities within a county be taxed uniformly. It does require, however, that the tax levied by a single governmental taxing unit be levied at the same rate against all property subject to the tax, regardless of the number of communities in which property subject to the tax is located.

Plainly, in the case before us, the plaintiff school district's ad valorem property tax was not spread uniformly against all of the property in the school district subject to that tax. The levy was 9.1 mills against property situated within the Township of Grand Rapids for the school tax, and 10.1 mills

against property located in the city. That is not uniformity.

The plaintiff asserts, however, that it is excepted from the rule of uniformity by reason of the variable millage provision of act 162 which, according to its terms, authorizes the imposition of a non-uniform levy by a single taxing authority.

The defendant argues that act 162 conflicts with the uniformity provision of the constitution and asserts that the act is unconstitutional.

The plaintiff responds that, upon virtually identical facts as those presented in this case, this Court in *Thoman, supra,* approved the levy of a variable millage by a school district against property located partly in a township and partly in an adjoining city.

It is indeed correct that in *Thoman* this Court addressed the identical issue we face today and held that the uniformity of taxation provision of the 1908 Constitution must "yield" to a subsequently adopted constitutional provision which authorized incorporated municipalities to levy taxes in an aggregate amount which exceeds the 15-mill constitutional limitation. In *Thoman,* the Lansing School District was the taxing authority. The district included all of the City of Lansing and a portion of Lansing Township. Just as in this case, the 15-mill limitation applied to taxation of property within the township, but not to that within the city. Consequently, the county tax allocation board, in the name of act 162, authorized the levy of 8.1 mills of school district taxes against property located in the township, and 10.6 mills against property located within the city. The *Thoman* Court majority, apparently confusing the taxing power of the city with that of the school district, reasoned that if a higher tax could not be

imposed within the city as act 162 authorizes, then the city charter, which authorized a total tax *from all sources* in excess of 15 mills, would be effectively nullified. The Court observed that, by the addition to art 10 of Const 1908 in 1932 of § 21, which permitted aggregate tax levies in excess of 15 mills "when provided for by the charter of a municipal corporation", there resulted a conflict between the constitutional provisions providing for uniformity of taxation on the one hand, and the power of municipalities to exceed the 15-mill limitation on the other. The Court said:

"Obviously under the circumstances of this case the two noted constitutional provisions are in conflict; and it becomes impossible to literally comply with both." *Thoman*, 315 Mich 577.

To reconcile the conflict, the Court declared:

" 'It is a fundamental rule of construction that if there is an amendment to the law, in this case an amendment to the Constitution, and by such amendment an earlier provision of law is qualified or restricted, the later or amendatory provision must control.' *People ex rel Chapoton v Common Council of the City of Detroit*, 38 Mich 636 (1878); *Bernier v Bernier*, 72 Mich 43; 40 NW 50 (1888); *People v Thompson*, 161 Mich 391; 126 NW 466 (1910). The provision in art 10, § 3 as to a uniform rule of taxation was carried into the Constitution of 1908 from the 1850 Constitution, but in 1932 art 10 of the Constitution was amended by the addition of section 21, in part above quoted. By section 21 there was embodied in the Constitution a limitation of the rate of taxation to one and one-half per cent of assessed valuation, except for obligations theretofore incurred: *'Provided, That this limitation may be increased * * * when provided for by the charter of a municipal corporation.'* [Emphasis in original.]

\* \* \*

"It must be held that the 1932 constitutional provision controls as against the earlier provision in section 3, as to a uniform rule of taxation.

*   *   *

"To some extent the two provisions are repugnant to each other and the earlier provision must yield to the later under the circumstances of this case." 315 Mich 578-579.

Thus, without ever addressing the constitutionality of act 162, the Court, by deciding that the uniformity provision must "yield", authorized the tax allocation board of Ingham County to allocate 8.1 mills of property tax against township property, and 10.6 mills against city property for the same school district tax.

We think that the *Thoman* case was not well reasoned. Suffice it to say that the majority in *Thoman* appears to have misapprehended the issue before the Court. It apparently understood the uniformity of taxation requirement to preclude the City of Lansing from imposing its *own municipal taxes* in an amount which would exceed the 15-mill limitation provision. That was not the issue before the Court. The issue was whether that fractional portion of all of the taxes imposed against property in the City of Lansing which were attributable to the Lansing School District levy could be in an amount greater than the millage imposed against township property within the school district for the same levy without offending the uniformity clause of the 1908 Constitution. The correct answer was in the negative. As Justice Sharpe, the dissenting member, clearly saw and so plainly articulated:

"Under the uniform rule of taxation we have held that taxes cannot be imposed in disregard of any rule of

uniformity, *Merrill v Humphrey,* 24 Mich 170 (1871); and that the policy of the State is to secure uniformity and equality, *Hogelskamp v Weeks,* 37 Mich 422 (1877). It seems clear that 'a uniform rule of taxation' means just what it says, *i.e.,* that taxation shall be uniform. It has no relation to the maximum or minimum limits of taxation. The so-called 15-mill amendment of the Constitution relates solely to the amount of taxes that may be assessed against a piece of property in one year and provides for a limitation of such amount. It in no way infringes upon the rule of uniformity.

"If the school district seeks or needs a rate of taxation in excess of 15 mills, the amendment provides a method for so doing. The Constitution of the State of Michigan is our basic law. All acts of the legislature should and must harmonize with the Constitution. Act No. 162, Pub. Acts 1933, permits an additional tax to be levied and assessed against property located in the city portion of the school district. The effect of this act is to authorize two rates of taxation within a single taxing unit. The act offends the uniform rule of taxation and as such is unconstitutional." 315 Mich 575-576.

We agree with Justice SHARPE's analysis and need add little to what he wrote.

In order to satisfy the uniformity requirement of Const 1963, art 9, § 3, a tax rate imposed by a single taxing unit must be identical throughout the territory to which it applies, townships and municipal corporations alike. A school district tax, therefore, must be levied at the same rate throughout the school district. Since act 162 authorizes variable rates of taxation within a single school district, it violates the uniformity clause of Const 1963, art 9, § 3.

Accordingly, we declare act 162 to be unconstitutional, reverse the judgment of the Court of Appeals, and overrule *Thoman v Lansing.*

We remand to the trial court for entry of an order designed to refund or credit to taxpayers in

the City of East Grand Rapids such sums as were improperly assessed and paid for East Grand Rapids School District taxes by reason of the 1-mill extra levy imposed pursuant to act 162 for the 1979 tax year.

No costs, a public question being involved.

Fitzgerald, C.J., and Kavanagh, Williams, Levin, and Coleman, JJ., concurred with Ryan, J.

Riley, J., took no part in the decision of this case.